# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 10-CR-90-LRR |
| vs. | **ORDER** |
| JACINTO RIVERA-MENDOZA, | |
| Defendant. | |

## I. INTRODUCTION

The matter before the court is Defendant Jacinto Rivera-Mendoza's "Motion to Dismiss Count 7 for Lack of Venue" ("Motion") (docket no. 166).

## II. RELEVANT PROCEDURAL HISTORY

On January 12, 2011, a grand jury returned a nine-count Third Superseding Indictment ("Indictment") (docket no. 135) against Defendant and twelve co-defendants. Count 1 charges Defendant with Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count 7 charges Defendant with Reentry of a Previously Removed Alien, in violation of 8 U.S.C. § 1326(a) and (b)(1).

On January 26, 2011, Defendant filed the Motion. On February 7, 2011, the government filed a Resistance (docket no. 174). On February 17, 2011, the court held a hearing ("Hearing") on the Motion. Attorney Raphael Scheetz represented Defendant, who was personally present. Special Assistant United States Attorney Daniel Chatham represented the government.

## III. RELEVANT FACTUAL BACKGROUND

On September 20, 2010, multiple law enforcement agencies, including Homeland Security Investigations ("HSI") and the Drug Enforcement Agency ("DEA"), executed a

narcotics search warrant at Defendant's residence in Des Moines, Iowa.[1] The warrant was issued in the United States District Court for the Northern District of Iowa.

HSI Agent Ash Ivers described his role in executing the search warrant as "fairly minimal." However, he did interview Defendant. Agent Ivers asked Defendant whether he was a citizen or national of Mexico and whether he was in the United States illegally. Defendant answered both questions affirmatively. He did not ask whether Defendant had been deported previously. Agent Ivers did not recall asking Defendant his name, but testified that his name had "already been established."

During the search, law enforcement discovered a number of identity documents, which appeared to be fraudulent. Agent Ivers asked Defendant about these documents and Defendant told him that he received the documents in another state several years prior.

After completing the search, Agent Ivers called HSI Special Agent Dave Hoagland and informed him that Defendant admitted to being present in the United States illegally. Agent Ivers did not conduct any further investigation regarding Defendant's immigration status at that time.

Agent Hoagland described the narcotics investigation that led to the search warrant. In June 2010, authorities began monitoring the telephones of suspected methamphetamine dealers through a Title III (18 U.S.C. § 2518) wiretap. In various conversations recorded through the wiretap, Defendant used cell phones subscribed to several different names in several different cities and identified himself using multiple names, including Salvador Figueroa, Don, Tio, Colima and Don Jacinto. The wiretap did not intercept any telephone calls from a telephone registered to an account bearing the name Jacinto Rivera-Mendoza.

In August 2010, Iowa State Patrol conducted a traffic stop of Defendant's vehicle. He provided a Mexican identification card with the name Salvador Figueroa-Arias. Agent Hoagland ran that name through the immigration database and learned that no one is

---

[1] Des Moines, Iowa is located in the Southern District of Iowa.

legally present in the United States with that name and date of birth. The original Indictment, returned on September 14, 2010, named Defendant as Salvador Figueroa with a number of aliases. Defendant was arrested on September 20, 2010 on a warrant in the name of Salvador Figueroa-Arias.

At the same time that law enforcement conducted the search in Des Moines, Iowa, Agent Hoagland assisted in executing another search warrant at the residence of Jesus Del Rio in Columbus Junction, Iowa. At that residence, law enforcement discovered multiple identification documents bearing Defendant's picture and different names.

Although he was not in Des Moines on September 20, 2010, Agent Hoagland testified that "his understanding" is that Defendant provided the name Jacinto Rivera-Mendoza during an interview with DEA agents on that date. However, found at his residence on September 20, 2010 were various identification documents in the names of Sergio Vasquez Oliva and Salvador Figueroa-Arias. At the end of the Hearing, the parties stipulated that Defendant did give what was later verified to be his true name and birth date when law enforcement questioned him during the search on September 20, 2010.

On September 23, 2010, after Defendant was transported to the Northern District of Iowa for an initial appearance, Agent Hoagland ran his booking finger prints and discovered that Defendant's name was Jacinto Rivera-Mendoza and that Defendant had been previously deported. At that time Agent Hoagland placed an immigration detainer on Defendant.

### IV. RELEVANT LAW

#### A. Venue as a Jury Question

The government bears the burden of proving that venue is proper. *United States v. Black Cloud*, 590 F.2d 270, 272 (8th Cir. 1979). "'Proof of venue is an essential element of the [g]overnment's case. It may be established either by direct or circumstantial evidence . . . . [U]nlike other elements of a crime which must be proved

beyond a reasonable doubt, venue need only be proved by a preponderance of the evidence.'" *United States v. Netz*, 758 F.2d 1308, 1312 (8th Cir. 1985) (quoting *United States v. Massa*, 686 F.2d 526, 527-28 (7th Cir. 1982)). Although venue is normally a jury question, "[w]hen the relevant facts to determining venue are not disputed, the district court may resolve the issue as a matter of law." *United States v. Bascope-Zurita*, 68 F.3d 1057, 1062 (8th Cir. 1995). The court finds that it is able to resolve the venue issue as a matter of law. The facts most relevant to the analysis are not in dispute; the only disputes before the court are the legal implications of those facts.

### B. Venue for Purposes of Illegal Reentry

Section 1326 provides that an alien is guilty of a crime if that alien "has been . . . deported[] or removed . . . [from] the United States" and thereafter "enters . . . or is at any time found in, the United States . . . ." 8 U.S.C. § 1326(a)(1)-(2).

The Eighth Circuit Court of Appeals has held that illegal reentry, as set forth in § 1326, is a "continuing violation." *United States v. Diaz-Diaz*, 135 F.3d 572, 577 (8th Cir. 1998). This means that illegal reentry "is not complete until the alien is discovered by immigration authorities." *Id.* (internal quotation marks omitted). "'Discovery' in this context consists of two elements: (1) the discovery of a previously deported alien's physical presence in the United States; and (2) the ascertainment of the identity and status of the alien." *Id.* It is important to remember that "[o]nly the physical presence of a particular type of alien, that is, an alien who was previously deported violates the statute." *United States v. Gomez*, 38 F.3d 1031, 1036 (8th Cir. 1994). "This aspect of discovery requires linking the presently perceived alien . . . to a historical event (the deportation of [the alien])." *Id*; *see also United States v. Herrera-Ordones* 190 F.3d 504, 510 (7th Cir. 1999) (stating that an illegal alien is not "found" until law enforcement "ascertains the alien's identity (as an illegal alien) and status (as one who has reentered after deportation)").

4

Additionally, the Ninth and Second Circuits have held that "[t]he offense of being 'found in' the United States in violation § 1326(a) is not complete until the authorities both discover the illegal alien in the United States, and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence." *United States v. Hernandez*, 189 F.3d 785, 789 (9th Cir. 1999) (quoting *United States v. Rivera-Ventura*, 72 F.3d 277, 282 (2d Cir. 1995)). Likewise, the Fourth Circuit Court of Appeals found venue proper when a defendant was transferred to another district for the purposes of ascertaining his identity and status, because when federal immigration authorities transferred the defendant, they were conducting an investigation and lacked "actual knowledge of either his real identity or immigration status, let alone both." *United States v. Uribe-Rios*, 558 F.3d 347, 357 (4th Cir. 2009).

The Seventh Circuit Court of Appeals has held that diligence on the part of law enforcement is not relevant to the venue analysis in illegal reentry cases. *See United States v. Are*, 498 F.3d 460, 465 (7th Cir. 2007) ("[W]hether the immigration authorities exercised 'appropriate diligence' in discovering the deportee's presence has no bearing on venue."). Under this approach, there is the possibility of "multiple lawful venues." *Id.* at 464. The Seventh Circuit Court of Appeals has also discounted the voluntariness of an alien's presence as a relevant factor. *Herrera-Ordones*, 190 F.3d at 511 ("[W]hether an alien was in a particular location by choice has no relevance in venue determinations.").

## V. ANALYSIS

Venue for Defendant's trial on the offense of illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a)(1)-(2), is proper in the Northern District of Iowa because it was in the Northern District of Iowa where immigration authorities determined that Defendant was physically present and had previously been deported.

When Defendant was arrested in the Southern District of Iowa on an arrest warrant on a drug conspiracy charge, his true name and date of birth had not been confirmed.

5

During the Title III monitoring in the months prior to his arrest, Defendant used cell phones subscribed to by a variety of names, but never the name of Jacinto Rivera-Mendoza. During the monitored calls, Defendant referred to himself as Salvador Figueroa and a number of other names, but never as Jacinto Rivera-Mendoza. Law enforcement obtained the arrest warrant for Defendant in the name of Salvador Figueroa, knowing it was likely an alias, because they had not confirmed his true name and date of birth. After his arrest and post-*Miranda* interview, he stated his name was Jacinto Rivera-Mendoza and he gave a date of birth. Based on other identification documents found in the Southern District of Iowa and the Northern District of Iowa, it was not apparent at that time that he had given his true name and date of birth.

Although he told authorities during the search in the Southern District of Iowa that he was a Mexican national, he did not tell authorities of his prior deportation. Authorities first learned of his prior deportation after he was finger printed in the Northern District of Iowa as part of his processing on the narcotics arrest.

Clearly, law enforcement did not intentionally avoid venue in the Southern District of Iowa. The agents were involved in a narcotics investigation and incidental to that learned of Defendant's immigration offense.

### VI. CONCLUSION

For the foregoing reasons, the Motion (docket no. 166) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 28th day of February, 2011.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA